My name is Julie Wise and I represent the plaintiff appellants in this case, Catherine and David Blumenkron and Springville Investors, LLC. With me at counsel table is Eric Verstynsky and we would reserve three minutes for rebuttal. Okay, keep your eye on the clock, it counts down. Yes, your honor. Your honors, this is a ripeness case arising out of a land-use dispute. Appellants are the owners of real property in an area of Multnomah County referred to as the L-shaped portion of land-use area 9B. In 2007, the Oregon Legislature set in process a process for designating urban and rural reserves outside of the urban growth boundary to ensure there was sufficient land for development in the future. The Land Conservation and Development Commission then set forth regulations to promulgate this new framework. Fast-forwarding to 2010, your honors, that's when appellants found themselves owning real property in Multnomah County that was burdened by a rural reserve designation. They challenged the rural reserve designation process as unconstitutional, but in 2015 the district court dismissed the case on prudential ripeness grounds. And so holding, the district court erred. We're going to talk about prudential ripeness, but first just a reminder about the draconian consequences of a rural designation. Appellants' ability to use their land, their real property, was significantly curtailed for a period of at least 40 years, up to 50 years, half a decade, excuse me, half a century, your honors. In addition, it's not surprising that that significant curtailment of the ability to use the land significantly decreased the property value. The unrebutted testimony in the record at ER 35, the declaration of Hank Skade, starting at paragraph 5, pointed out that there was a significant diminution of value in that real property. All of this demonstrates that there were very significant concrete impacts on the appellants, and that was the information that was before the district court. There's no question, but what if that's the final outcome, you've got a perfectly plausible, I won't say winning, but perfectly plausible claim for regulatory taking. The question is whether this is the final outcome. It's basically a Williamson County case, although you guys don't seem to cite Williamson County for that proposition, but the Supreme Court tells us this basically back in 1985. It's not ripe until we have a final determination by the state authorities. And your honor, appellants did not allege a taking claim, but we acknowledge your question. In our opinion, there was a final administrative resting place that had been reached. And the basis for the district court's, I'll go right to the basis for the district court's determination that this matter was not fit for review, because when the Oregon Court of Appeals set aside that acknowledgment order in part, it remanded only in part, as to a different land use area, not as to area 9b. That came down to LCDC. LCDC then remanded the matter to Metro and to the county to correct that flaw regarding a different land use area. At that point, the district court felt like the matter was uncertain. She wasn't sure that it was now an administrative resting point. But in our opinion, it was at an administrative resting point. If you look at the Barker's 5 decision, the Oregon Court of Appeals identified a flaw only with respect to area 9d. And then when the LCDC remanded the matter to Metro and the county, your honors, it only remanded rural reserve area 9d. That is clear at ER 48. In addition, the remand order actually incorporated its prior findings in the acknowledgment order that had not been disturbed by the Court of Appeals. So it actually incorporated the prior finding regarding area 9b. There was no uncertainty. Area 9b was not being looked at. What the county says in its brief is that Metro and Multnomah counties have to determine the effect of this error on this other parcel on the designations of reserves in Multnomah County in its entirety. Is that wrong? Your honor... In other words, not necessarily is there going to be a redetermination of your client's property, but is it possible that there might be? I think that's what the district court thought. You're correct, your honor. The district court thought it was possible that area 9b would look would be looked at in conjunction with area 9d. But the fact that the LCDC remand order actually told Multnomah County and and Metro, we are incorporating our prior findings as to area 9b. The Oregon Court of Appeals said 9b was appropriately designated. Go forth and fix area 9d. We actually, appellants actually asked LCDC to vacate the entire reserves designation and they declined to do so. So that remained in place. But I'm not sure there's total, I'm not sure I'm seeing total clash here. I'm trying to figure out whether your position is that legally the district court was incorrect, that there is a possibility of areas, it's just it's impossible, it's not going to happen, or it's so unlikely. It's just real, your honor, maybe it's not impossible, but it's really, really, really unlikely. Which one is it? It's really, really, really unlikely, your honor. That was, that was appellant's position and that remains appellant's position. After LCDC remanded that matter, it was... I don't know how many really's we want to have, but if it's really unlikely, and we're talking prudential mootness, how much discretion does the district judge have to say, I don't think it's ripe at this point? Your honor, this is a question, this, you're reviewing this matter de novo, even though ripeness is reviewed de novo, and what we need to look at is what did the district court say. And the district court said, these, I'm finding these claims not fit for review because there is uncertainty regarding future municipal or legislative actions. And regarding the municipal actions, the LCDC remand order had actually told Multnomah County, Multnomah County and Metro, you know, you did everything right, just go back and fix Area 9D. And if you look at the briefs of Metro and Multnomah County, they actually indicated that there was, there was no certainty at all that they were actually even going to go back and re-engage on the reserves process. All of that indicated that there really wasn't any significant uncertainty regarding the municipal actions. And regarding the legislative actions, your honors, that was another thing that Judge Brown pointed to. The legislative session had actually already ended. She acknowledged in the order that the legislative section had come to a conclusion, yet somehow the possibility of future legislative action was viewed as also creating uncertainty regarding the designation of Area 9B. But we cited to the Haskell v. Harris decision from this court that indicates it's improper to look at the potential future speculative action of a legislature to determine whether a matter is fit or not. And that actually also tainted the district court's fitness determination. In addition, your honors, it is undisputed that the facial challenge to the regulations was still before the court. And facial regulation, a challenge to, a facial challenge to regulations is generally ripe upon promulgation of the regulations. The State acknowledged that in its brief. Therefore, there was no question as to the fitness of the facial challenge to the regulations. There also should have been no question as to the fitness of the 1983 claims, at least for that period of time when the order had been acknowledged. So for a period of about five years, the real reserve designation was acknowledged by LCDC, and there were constitutional deprivations taking place during that time. 1983 claims, as we know, don't suddenly go away because of future action. They don't get mooted by that. Therefore, there were other bases on which the court should have found the matter fit. Your honors, turning to the issue of hardship, the district court also erred on determining that there was no hardship from delayed review. The hardship determination refused to take into account that great diminution in property value that I mentioned previously. The evidence in the record, ER 35, the declaration of Mr. Skade's value of property that was owned by the LLC. There was actually testimony from which this court could infer there would be significant harms flowing from delayed review. Mr. Skade explained that his sister lived in a home on the property. She'd been there for 21 years. She'd raised three children to the age of majority. And so she was a woman of mature years. The mother was in a nursing home. The father had passed. The family was facing decisions about what to do with the property. In addition, Mr. Skade testified in that declaration that in 2006 they actually had an option to sell that property. From this evidence, the district court could readily have inferred that there was a real harm flowing from delayed review of this property. So the district court erred on the hardship determination as well. Can I, this is a question about Mr. Skade's declaration a couple of times. Judge Brown found that your clients had not suffered economic harm. Wasn't she at liberty to do that if she found that Mr. Skade's declaration was not credible? And so wouldn't we review that finding that she made on a clear error basis? Your Honor, she didn't find that the declaration was not credible. What she found was that rather than simply saying we have a diminished property value, that she wanted to see further evidence that the property was going, that someone had tried to sell the property, for example, or take other action that was directly contradicted by the Rural Reserve designation. But from our perspective, those inferences that could have been drawn from the declaration support the finding that there was a very real, concrete, particularized, at that time, effect on the property rights of appellants. Your Honors, we did briefly discuss constitutional ripeness in the briefs as well. The judge did not dismiss the case on constitutional ripeness grounds. For all of the reasons that we feel the case was prudentially ripe and the district court erred, they all support Article III case or controversy as well. I'd be happy to answer any questions the court might have about that. But I think what I'll do is, if you don't have questions, I'll reserve the remainder of my time and just ask the All the appellants want is an opportunity to have the merits of their constitutional claims heard. And heard now, rather than later. Okay, let's hear from the other side. Good morning. I am Patrick Ebbett, and I represent the State Defendants, the members of the Land Conservation Development Commission for the State of I'm sorry, excuse me? So what are we waiting for? Well, right now, we were waiting, we are waiting for the county and metro, the local governments to take action on the remand order that my clients submitted to them after the Oregon Court of Appeals reversed the acknowledgment of the designations and remanded back to Land Conservation Development Commission to act. So, and when's that going to happen? Well, I mean, as I understand it, the local process is ongoing. My clients, at some point soon, I'm not sure when, will have an But they have not at this point. What's essential about this case is the acknowledgment order from which plaintiffs contend that my clients injured them has been reversed and remanded both by the Oregon Court of Appeals and, in turn, by LCDC. So, and that so accordingly, that acknowledgment order isn't, that they're challenging is no longer operative. And for that reason, there's not even any Article III ripeness. And Article III ripeness requires that there, that whether there's an actual injury is particularized and sufficiently certain to satisfy the case or controversy requirement. Let me pursue this a little more, but you may not be able to give me a more precise answer than you already have done. I'm very sympathetic, in general, to landowners who are faced with an uncertain situation, going to be resolved at some point. When it's finally resolved, they can then move on. They can But while it's in limbo, they really can't. The Supreme Court, from time to time, allows compensation under First English, but that's somewhat uncertain. So I ask again, when, in your view of finality, are we likely to have some finality so the district judge can get to it? With respect to LCDC, I expect that they will get to some finality. It's my understanding, I realize this information isn't in the record, but it's my understanding that the local governments have provided LCDC with a submittal. LCDC will be reviewing that submittal sometime in the next month or so. And I don't know how long after that they'll issue a final acknowledgment or if they'll do something else. That's the key thing. We don't know whether they will again remand for particular purposes or and to what extent they'll remand. I don't see in the record that there's any deadline or obligation. I didn't see anything that would obligate them to make their decision by any particular point in time. Is that wrong? I think the — and I can't cite the particular rules or statutes by name, but there are timelines on which they have to rule in these proceedings. Of course, beyond that, if they do acknowledge or if they don't acknowledge, either of which that acknowledgment order could be appealed to the Oregon courts. But right now what we have is simply no burden on the property's — on Petitioner's property — excuse me, Plaintiff's property as a result of any action taken by LCDC. Well, anticipating something Ms. Weiss might say in rebuttal, isn't there — doesn't these proceedings cast a cloud over her client's property so that whether or not — you know, we can debate whether the acknowledgment order is in effect, but doesn't the pendency of these proceedings make it very unlikely that they could go ahead and develop them? I mean, there is, you know, legal doctrines for clouds. There's, you know, blight on the — you know, condemnation blight, that kind of thing. But I don't think that's what we're looking at here. Any — there's simply no real — there's a very — there's no certainty or even close to certainty that when this case gets back to LCDC that they will affirm Plaintiff's — the designation that Plaintiff's can complain of. And that certainly doesn't meet the kind of immediacy that is required for Article III ripeness. And one thing I did want to point out is there seems to be a slightly — when we're talking about declaratory relief, obviously an actual injury that has occurred is not the issue. The issue is whether an injury is of sufficient immediacy and reality. But we don't have that either on these facts. The only other thing I wanted to mention was to respond briefly to counsel's comment that the record permitted an inference that there were economic damages in spite of the Court's ruling to the contrary. That's not appropriate under a clear standard of review. Under a clear standard of review, it's presumed that the Court made inferences consistent with its position, and that's what happened here. Unless the Court has any other questions regarding LCDC's role, I will hand things off to counsel for the county. Roberts. Okay. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Jackie Kamens. I represent Multnomah County in these proceedings, and the arguments applicable to Multnomah County apply with equal force to the Metro defendants, the other local government defendants. Now, it's important to remember that in a case of ripeness, it's really just an issue of the timeline. It's a question of whether we're at the right point in time to challenge these designations. And that depends on whether there is actually an injury. For Article III ripeness or for prudential ripeness, you really have to look at, is anything causing the plaintiff's, the appellant's harm? And there's two reasons that these designations cannot possibly be causing the harm that appellants argue. The first one is statutory. There's an Oregon statute, ORS 197-175, sub 2, which says that local governments cannot act on an unacknowledged plan. And that's what we have here. What we have here are designations that have been submitted to LCDC, represented by counsel, for review and approval. While it's, until LCDC acknowledges the plan, the local governments must not, must not act in compliance with the goals, as if the plan does not exist, as if these designations do not exist. Could you give me that citation again, please? Sure. It's ORS 197-175, sub 2. Thank you. And the other reason is factual. The law is clear that these designations do not have a current impact on the appellants. And the other, and factually, looking at the record, there is no evidence of an impact on the appellants. Well, but that's silly. We know that so long as something is determined, that will affect the ability to sell at a particular price. So I don't need anything beyond that common-sense observation to know that there's an impact. I guess the difference is, is there an impact with legal effect? That's a different question. Fair enough, Your Honor. And while there may be a belief that their property value has diminished, that's exactly the type of injury that is speculative. Were they to try to sell their property, and were they to experience an inability to sell their property, well, then there would be facts in the record to support that contention. Right now, there's only a statement, one statement in the entire record to support any, the factual contention. No. Are you fighting that same battle again? Are you telling me that it makes no difference to the selling price, that this is in limbo? I'm not, I'm not saying it makes no difference to the selling price. It very well may. But for the, for the issue to be ripe, for the facts to support that they are currently experiencing a concrete injury, there, there should be some evidence that they have tried to sell the property and that their, the property value has diminished. Other than the property ownership. But I don't think you're saying this, but are you saying that if they had tried to sell the property and they got an offer at a low price, the case would be ripe? I don't think. I don't think you're saying that. That's correct, Your Honor. I think the statute would still prohibit any actual impact. I think it would be a good. Right. So what you're talking about, about there's no concrete evidence, the diminution price is totally beside the point from your, from your standpoint. Well, I think it would be a good bit closer to ripe. But it's, they basically make two allegations. The one is that they can't develop the property the way that they want to. And there's no, they haven't sought a permit to develop the property and been denied. And then the other allegation is that they can't sell the property the way that they want to, but they haven't tried. So the, the actual, the evidence, the factual evidence of injury is, is very thin. Let me come back to this again, and then I'll leave it alone. You say, but they haven't tried. Are you saying that if they had tried, the case would be ripe? I'm saying that it's not clear from this record. I think the answer is just no. I think the answer, I think you're right. I think the answer is no. And the reason that I think it's, it's a significant fact is that we don't know that it's true. All we have is one person saying he believes his property value has diminished. And so that's why the factual record is insufficient to support the allegation that their, that their case is currently ripe because the property value has diminished. We don't have any actual evidence to support it. The property owner believes his, his value has diminished. That's insufficient to, to demonstrate a current concrete injury. Another point I'd like to address is the counsel has argued that there's, that there's no certainty in the record that the local governments will engage in the process again, which could leave their property in endless limbo. And that's legally and factually, again, inaccurate. It's legally inaccurate because if the local governments don't engage in the process again, then the designations will never be acknowledged and they will never have any impact. If local governments did not take the remand of the Court of Appeals and LCDC back and do something with it, well, then the rural reserve designation that they're concerned about would go away. But factually, and this again is not in the record, the local governments have acted and they have sent a submittal to the Land Conservation and Development Commission and that is currently pending before the Land Conservation and Development Commission. Can you give us any more help than your co-counsel was as to the likely timing? I understand it's not in the record. The timeline for LCDC to act? Well, until we get to the point where it is final, as you would view finality. I believe that the, that LCDC has scheduled the matter to be heard in the middle of November and then once an issuance of a final order, once there was a final order issued, I believe the district court at that point viewed it final, sufficient to meet the standards of ripeness. We moved, we were in that position once before. Although Mr. Ebbett acknowledged that once that LCDC has acted, it can then go to the Oregon State Courts, right? So that might happen. That's correct and that's the position we were in before and the district court did not find the fact that it was before the Oregon State Courts sufficient to preclude her from considering the case. I see. Okay. So once LCDC issued its order, the case proceeded. And we are in a posture right now where the matter is pending before LCDC and an order I assume will be forthcoming. And I just want to go back to the argument that it's, that it's, it was really, really unlikely that any, that the, when the remand occurred and that the counties would consider the designations again, counsel has stated that it was really unlikely that those designations would change. And while that may be factually accurate, it's legally very significant, because if it's at all possible that the, that the designations would change, then that would, that would mean that the district court would be considering something that was changing dynamically at the State level. And in this case, I think it is, it's very fair to say that there is a possibility that it would change, because the county and Metro are required to view the designations as a whole. They're required to view the impact of changing one designation on the other designations. And that's, that's the best achieves standard, and it's, it's a Oregon regulatory rule that requires the county to consider the impact of any change, including the change of 9d, which is, admittedly is not plaintiff's area, on plaintiff's area. And I guess to, in sum, I think what this situation is similar to is, is, is like a game of musical chairs. If it would be as if once a chair is removed and then the players sue because their likelihood of receiving a chair had diminished, why, that's accurate, but the music is still playing. And we don't know, we don't have any resolution until the music stops and they get a chair or not. And in this case, we're right in the middle of the music, so I think we need to let it play out before they have the opportunity to challenge the resolution. Okay. Thank you. Thank you. You've saved some time. You don't, I don't think you like the music. Your Honors, this is anything but a game of musical chairs for the appellants. Appellants as landowners since 2010 have been burdened by a cloud on the title of their real property. It is a significant burden. The uncertainty as to when... I should know this, and it's in the record. How much property do your clients own? Your Honor, the L-shaped area is 660 acres, I believe, or the Springville Investors, I believe their portion was about 28 acres, and I'm not sure about the L-shaped area, but they do have a home on their real property. Okay. Your Honors, we don't know when this process is going to come to an end. The last go-around after the LCDC hearing, there was actually a one-year period before an acknowledgment order issued. So if we have a hearing in November, I don't know when an acknowledgment order will issue. Help me with the nature of your underlying claim on the merits. What is that claim? Your Honor, there are a series of claims that the process was unconstitutional under the United States Constitution, both due process, substantive, and procedural. Also, equal protection by treating these landowners in the L differently than other similarly situated landowners. There's an equal protection claim. They are brought through the vehicle... And then tell me why there's an equal protection claim. Differential treatment, of course, doesn't give you a claim on its own. Irrational. An arbitrary and capricious treatment of these property owners, different than the other property owners without a good purpose by the state. Do you have other claims besides equal protection? That one doesn't strike me as... I'm not going to get to the merits, but... Sure. That strikes me as a weak claim. Okay. What are your other constitutional claims? The procedural due process, substantive due process... And so by substantive due process, what do you mean by that? The arbitrary and capricious manner in which the process was... the designation of the rural reserves was handled, essentially. And then also there is the facial challenge under equal protection and under due process to the regulations themselves. And do you have a takings claim? No, there is not a takings claim. Okay, and your clients have a Section 1983 claim, do they not? Yes, they do. But the 1983, of course, is a pass-through to the merits you're talking about. I mean, 1983... That's correct. The vehicle. There's some other underlying claim, so it's equal protection. Substantive due process, procedural due process, both in terms of the process that occurred and the promulgation of the regulations. So, Your Honors, we don't know when there will be another acknowledgment order. I suspect there will be further litigation in the Oregon Court of Appeals. So from our perspective, appellants simply face continued uncertainty and they want to have their day in court. They want to have the merits of their constitutional claims adjudicated. Certainly, I heard nothing from opposing counsel indicating that the facial challenge to the regulations was not fit for review. Those are typically ripe upon promulgation of the regulations. I heard nothing about the 1983 claim, which is undisputed that for about a five-year period, there was an acknowledged order in place. So whether or not we think that the acknowledgment is the only thing that has an impact on the real property, we had an acknowledgment in place for a period of years, and there were constitutional deprivations during that time. That doesn't go away because of future conduct. We also did, I'll just briefly point out, we cited to ORS 197-175 sub 2 for the impact of an unacknowledged situation where there is legal impacts flowing from even an unacknowledged decision. So for all of these reasons, Your Honor, we would ask the court to reverse the district court and allow appellants to have their day in court. Okay, thank you. Thank both sides for their arguments. The case of Blumenkron et al. versus Eberwein et al. submitted for decision.
judges: Fernandez, W. Fletcher, Tigar